## UNITED STATES COURT OF INTERNATIONAL TRADE

WEBB WHEEL PRODUCTS, INC.

        Plaintiff,

    and,

CONSOLIDATED METCO, INC. and
SHANDONG CONMET MECHANICAL
CO., LTD.,

        Consolidated Plaintiffs,

    v.

UNITED STATES OF AMERICA,

        Defendant,

    and,

CONSOLIDATED METCO, INC. and
SHANDONG CONMET MECHANICAL
CO., LTD.

        Defendant-Intervenor,
    and,

WEBB WHEEL PRODUCTS, INC.

        Consolidated
        Defendant-Intervenor.

Consol. Ct. No. 25-00207
Before Hon. Timothy C. Stanceu,
Senior Judge

## PLAINTIFF WEBB WHEEL PRODUCTS, INC.'S RULE 56.2
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court of International Trade, Webb Wheel

Products, Inc. ("Plaintiff" or "Webb"), hereby moves for judgment on the agency record with

respect to the issues raised in Webb's Complaint filed with the Court on October 14, 2025.

*Webb Wheel Products, Inc. v. United States et al.*, No. 25-00207, ECF No. 10 (Oct. 14, 2025) ("Compl.").

Plaintiff brings this complaint to contest a portion of the U.S. Department of Commerce's ("Commerce") final affirmative antidumping determination covering Certain Brake Drums from the People's Republic of China ("China"). *See Certain Brake Drums from the People's Republic of China, 90 Fed. Reg. 26011* (Dep't Commerce June 18, 2025) ("*Final Determination*"), and accompanying Issues and Decision Memorandum (Dep't Commerce June 13, 2025); see also *Certain Brake Drums From the People's Republic of China and the Republic of Türkiye: Antidumping Duty Orders*, 90 Fed. Reg. 38730 (Dep't Commerce Aug. 12, 2025) ("AD Order"). As demonstrated in Plaintiff's brief in support of this motion, Commerce's *Final Determination* is not supported by substantial evidence and is otherwise not in accordance with law.

Plaintiff, therefore, respectfully requests that this Court grant judgment in its favor and remand the *Final Determination* to Commerce for reconsideration consistent with the opinion of this Court.

A proposed order accompanies this motion.

Respectfully submitted,

/s/Sydney H. Mintzer
Jacob M. Reiskin
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3866
*Counsel to Webb Wheel Products, Inc.*

Dated: March 23, 2026

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| WEBB WHEEL PRODUCTS, INC.<br><br>          Plaintiff,<br><br>    and,<br><br>CONSOLIDATED METCO, INC. and SHANDONG CONMET MECHANICAL CO., LTD.,<br><br>          Consolidated Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant,<br><br>    and,<br><br>CONSOLIDATED METCO, INC. and SHANDONG CONMET MECHANICAL CO., LTD.<br><br>          Defendant-Intervenor,<br>    and,<br><br>WEBB WHEEL PRODUCTS, INC.<br><br>          Consolidated<br>          Defendant-Intervenor. | Consol. Ct. No. 25-00207<br>Before Hon. Timothy C. Stanceu, Senior Judge<br><br>**PUBLIC VERSION**<br>Business Proprietary Information Removed on Pages 2-3, 9, 11-13. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WEBB'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Sydney H. Mintzer
Jacob M. Reiskin
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3866
*Counsel to Webb Wheel Products, Inc.*

Dated: March 23, 2026

ii

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 .................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 7

STANDARD OF REVIEW .......................................................................................................... 7

ARGUMENT ................................................................................................................................ 8

      I.      COMMERCE'S SURROGATE VALUE FOR SHANDONG CONMET'S CONSUMPTION OF "RECARBURIZING AGENT" WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND MUST BE REMANDED ..................................................................................................... 8

CONCLUSION............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantic Sugar. Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ................................ 7

*Baoding Mantong Fine Chemistry Co. v. United States*, 222 F. Supp. 3d 1231, 1250-51 (Ct. Int'l Trade 2017) ........................................................................................................ 13, 14

*Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) .............................................. 8

*Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360, 1379 (Ct. Int'l Trade 2022) ................................................................................................................................ 14

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1327 (Ct. Int'l Trade 2006) ............. 8

*Husteel Co. v. United States*, 491 F. Supp. 2d 1283, 1291-93 (Ct. Int'l Trade 2007) ..................... 8

*Motor Vehicle Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) ................................................... 8

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) ................................. 7

*Shenzhen Xinboda Indus. Co. v. United States*, 279 F. Supp. 3d 1265, 1298-1301, n. 36 (Ct. Int'l Trade 2017) ............................................................................................................. 8

*SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) ............................ 8

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) ................................................... 7

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ......................................................................................................... 7

19 U.S.C. § 1673(1) ......................................................................................................................... 2

19 U.S.C. § 1677b(c)(1) ............................................................................................................. 2, 8

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

**Administrative Decisions**

*Certain Brake Drums from the People's Republic of China. Certain Brake Drums from People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,* 90 Fed. Reg. 26,011 (Dep't of Commerce June 18, 2025) ................................................................. 1, 6

*Certain Brake Drums From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8383 (Dep't Commerce Jan. 29, 2025) ....... 1

*Certain Brake Drums From the People's Republic of China and the Republic of Türkiye: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 58116 (Dep't Commerce July 17, 2024) .............................................................................................................................. 1

**STATEMENT PURSUANT TO RULE 56.2**

Plaintiff Webb Wheel Products, Inc. ("Plaintiff" or "Petitioner"), challenges one aspect of the U.S. Department of Commerce's ("Commerce") final determination in the antidumping duty ("AD") investigation of *Certain Brake Drums from the People's Republic of China*. The final determination in the Department's investigation was published as *Certain Brake Drums from the People's Republic of China.  Certain Brake Drums from People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value,* 90 Fed. Reg. 26,011 (Dep't of Commerce June 18, 2025), P.R. 437 ("*Final Determination*"), and accompanying Issues and Decision Memorandum, P.R. 425 ("IDM").

**STATEMENT OF FACTS**

Commerce initiated the investigation of *Certain Brake Drums from the People's Republic of China* on July 10, 2024, following receipt of an antidumping petition filed with Commerce and the U.S. International Trade Commission on June 20, 2024. *See Certain Brake Drums From the People's Republic of China and the Republic of Türkiye: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 58116 (Dep't Commerce July 17, 2024), P.R. 35.

Commerce then selected Shandong ConMet Mechanical Co., Ltd. ("Shandong ConMet") as one of two mandatory respondents to examine individually. *Certain Brake Drums From the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination and Extension of Provisional Measures*, 90 Fed. Reg. 8383 (Dep't Commerce Jan. 29, 2025), P.R. 371 ("*Preliminary Determination*"), and accompanying Decision Memorandum, P.R. 357 (Dep't Commerce Jan. 23, 2025).

To determine whether "merchandise is being, or is likely to be, sold in the United States at less than its fair value," Commerce must calculate an antidumping duty that reflects the

**PUBLIC VERSION**

amount by which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States). 19 U.S.C. § 1673(1). When the investigation involves a non-market economy such as China, Commerce calculates normal value "on the basis of the value of the factors of production utilized in producing the merchandise," commonly referred to as "surrogate values" ("SV"). 19 U.S.C. § 1677b(c)(1). The statute directs Commerce to value the factors of production "based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by" Commerce. *Id.*

As part of Shandong ConMet's response to Section D of Commerce's questionnaire concerning the company's cost to produce subject merchandise, it provided an exhibit that listed and described each of its factors of production ("FOPs"). Letter from Matthew R. Nicely, Akin Gump Strauss Hauer & Feld LLP, to the U.S. Dep't of Commerce, re: *Response to the Section D of the Department's Initial Questionnaire* at Ex. D-6 (Oct. 16, 2024), P.R. 226, C.R. 207 ("Shandong ConMet Section D"). A review of Column C2 of that exhibit – "Descriptions_EN" – demonstrates that ConMet understood what information it was required to provide. These descriptions would be used to classify each input under the surrogate country tariff schedule, which ConMet argued should be Turkey. *See id.,* P.R. 226, C.R. 207; Letter from Matthew R. Nicely, Akin Gump Strauss Hauer & Feld LLP, to the U.S. Dep't of Commerce, re: *Comments on Surrogate Values* at 2 (Dec. 5, 2024), P.R. 273 ("Shandong ConMet Initial SV Comments"). Whereas for the vast majority of its FOPs, it provided highly detailed descriptions that are [                    ] to the descriptions found within the Turkish tariff schedule, for the "recarburizing agent," its description was [

2

] *See* Shandong ConMet Section D at Ex. D-6, P.R. 226, C.R. 207; Shandong ConMet Initial SV Comments at Attach. 3, P.R. 273.

Then, in its December 5, 2024, Surrogate Value Submission and December 26, 2024, Additional Surrogate Value Comments, ConMet demonstrated no knowledge of what the recarburizing agent actually is and, thus, suggested it should be classified in accordance with its raw material under Turkish tariff schedule subheading 2713.12, which is for "Petroleum Coke, Calcined." *See* Shandong ConMet Initial SV Comments at Att. 1, 3, P.R. 273; Letter from Matthew R. Nicely, Akin Gump Strauss Hauer & Feld LLP, to the U.S. Dep't of Commerce, re: *Additional Surrogate Value Comments* at 3 (Dec. 26, 2024), P.R. 316 ("Shandong ConMet Final SV Comments"). At the same time, Shandong ConMet stated that, as a backup, the Department could classify recarburizing agent as artificial graphite, 3801.10. *Id.* at 3-4, P.R. 316.

On January 2, 2025, with three weeks left before the signature date for the *Preliminary Determination*, Shandong ConMet still had not provided any description or information about its recarburizing agent. *See* IDM at 1, P.R. 425. In a supplemental questionnaire response requesting a "description of the materials associated with each number and any other name or code associated with the material in Shandong ConMet's ERP system," it again listed the FOP as a [                         ] without identifying information. Letter from Matthew R. Nicely, Akin Gump Strauss Hauer & Feld LLP, to the U.S. Dep't of Commerce, re: *Response to the Department's Supplemental Section D Questionnaire* at Ex. SD-20 (Jan. 2, 2025), P.R. 339, C.R. 354 ("Shandong ConMet Section D SQR"). Before the *Preliminary Determination*, Shandong ConMet had simply submitted as part of its Final SV Comments a document published by the Chinese government that described something called "graphitized recarburizer," supposedly another new name for Shandong ConMet's material input. Shandong ConMet Final SV

3

**PUBLIC VERSION**

Comments at 3-4, Att. 4, P.R. 316, P.R. 328. However, no actual details were included about the specifications of its own input.

In the *Preliminary Determination*, the Department valued Shandong ConMet's consumption of recarburizing agent using import data of Turkish tariff schedule subheading 3801.90 ("Preparations Based On Graphite, Nesoi"). *See also* Letter from Samuel Frost, International Trade Compliance Analyst, U.S. Dep't of Commerce to The File, re: *Surrogate Values for the Preliminary Determination* at Attachment 1 (Jan. 23, 2025), P.R. 364, ("Prelim SV Memo"). Petitioner demonstrated in its earlier rebuttal SV submission that Turkish tariff schedule subheading 3801.90 includes articles such as "Carbons in graphitic compounds" and "semi-finished graphite," matching the varied and general information Shandong ConMet provided about the recarburizing agent. *See* Letter from Sydney Mintzer, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *Rebuttal Comments Regarding Selection of Surrogate Values* at Ex. 2a (Dec. 16, 2024), P.R. 295 ("Petitioner Rebuttal SV Comments").

The Turkish tariff schedule reads as follows:

| Turkish Tariff Schedule | | | | | | |
|---|---|---|---|---|---|---|
| HS4 Code | HS4 Description | HS6 Code | HS6 Description | Primary Units | Tariff Line Code | Tariff Line Description |
| 3801 | Artificial Graphite; Colloidal Graphite; Preparations Based On Graphite Or Other Carbon In Pastes, Blocks, Plates Or Other Semimanufactures | 380110 | Artificial Graphite | KG | 380110000000 | Artificial Graphite |
| | | 380120 | Colloidal Or Semi-Colloidal Graphite | KG | 380120100000 | Colloidal Graphite In Solution In Liquid Oil; Semi; Colloidal Graphite |
| | | | | | 380120900000 | Colloidal Graphite; Semi; Colloidal Graphite; Other |
| | | 380130 | Carbonaceous Pastes For Electrodes And Similar Pastes For Furnace Linings | KG | 380130000000 | Carbonaceous Pastes For Electrodes And Similar Pastes For Insulating Furnaces |
| | | 380190 | Preparations Based On Graphite, Nesoi | KG | 380190001000 | Metallo; Carbons In Graphitic Compounds/Others |
| | | | | | 380190009000 | Preparations Based On Paste, Block, Sheet/Other Semi-Finished Graphite/Other Carbon |

*Id.* at Ex. 2b, P.R. 295.

Following the *Preliminary Determination*, Commerce officials completed verification in China of Shandong ConMet's questionnaire responses. There, the Department verified that Shandong ConMet purchased a graphitized product. Memorandum from Samuel Frost, Int'l Trade Compliance Analyst, Office V, to The File, re: *Verification of the Questionnaire Responses of Shandong ConMet Mechanical Co., Ltd. in the Less-Than-Fair-Value Investigation of Certain Brake Drums from the People's Republic of China* at 11 (May 6, 2025), P.R. 401, C.R. 485 ("Shandong ConMet FOP Verification Report"). None of the supporting purchase

invoices describe the recarburizing agent as "artificial graphite;" rather they continued to use various vague descriptions. *See id.* at Ex. 10, P.R. 401, C.R. 485.

Prior to the *Final Determination*, Shandong ConMet submitted a case brief arguing for changes to several aspects of the *Preliminary Determination*. *See generally* Letter from Matthew Nicely, Akin Gump Strauss Hauer & Feld LLP, to the U.S. Dep't of Commerce re: *Shandong ConMet's Case Brief* (May 15, 2025), P.R. 409, C.R. 492. One contention it made was that the Department should value Shandong ConMet's consumption of recarburizing agent using Turkish subheading 3801.10, or alternatively, 2713.12, because it claimed that those subheadings best match the physical description and function of the input. *Id.* at 8, P.R. 409, C.R. 492.

Webb submitted a rebuttal case brief providing extensive arguments that Commerce should affirm its *Preliminary Determination* by continuing to value Shandong ConMet's consumption of recarburizing agent using subheading 3801.90. *See* Letter from S. Mintzer, Mayer Brown LLP to the Dep't of Commerce, re: *Non-Scope Rebuttal Brief – Shandong ConMet Mechanical Co., Ltd.* at 2-10 (May 22, 2025), P.R. 416, C.R. 497 ("Petitioner Rebuttal Case Brief").

Commerce issued its affirmative *Final Determination* on June 13, 2025. *Final Determination,* P.R. 437 at 26013. Commerce announced that it determined it appropriate to use subheading 3801.10 (artificial graphite) instead of subheading 3801.90 (preparations based on graphite) that it used in the *Preliminary Determination*. IDM at 21, P.R. 425. The Department claimed that "the record contains clear evidence that Shandong ConMet uses artificial graphite . . . while containing no evidence that any other material is used." *Id.,* P.R. 425.

## SUMMARY OF ARGUMENT

The Court should remand Commerce's choice of surrogate value for Shandong ConMet's consumption of recarburizing agent. In the *Final Determination*, Commerce failed to address record evidence that contradicted its conclusion that the Turkish tariff schedule subheading 3801.10, covering "artificial graphite," provided the best surrogate data. Using a pattern of flawed logic, Commerce unreasonably dismissed or ignored record evidence that ConMet did not consume artificial graphite. Commerce's analysis also unreasonably disregarded additional evidence that the best available information to value the recarburizing agent was import data under Turkish tariff schedule subheading 3801.90, which Commerce relied on in the *Preliminary Determination*.

## STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination in an AD investigation, the Court "shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The substantial evidence standard requires the agency to "take into account whatever in the record fairly detracts" from the weight of the evidence that supports the agency's conclusion. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). In determining whether substantial evidence supports an agency determination, the Court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atlantic Sugar. Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

The standard also requires Commerce to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor*

*Vehicle Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *see also Husteel Co. v. United States*, 491 F. Supp. 2d 1283, 1291-93 (Ct. Int'l Trade 2007) (finding the agency's determination unsupported by substantial evidence because the agency "did not provide a reasoned explanation supported by a stated connection between the facts found and the choices made") (citation omitted).

**ARGUMENT**

I.    **COMMERCE'S SURROGATE VALUE FOR SHANDONG CONMET'S CONSUMPTION OF "RECARBURIZING AGENT" WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND MUST BE REMANDED**

When valuing factors of production in the non-market economy context, Congress directed that Commerce's determination must be based on the "best available information regarding the values of such factors." 19 U.S.C. § 1677b(c)(1). The statute does not define "best available information." *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018). Thus, the Court's role is to determine "whether a reasonable mind could conclude that Commerce chose the best available information." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1327 (Ct. Int'l Trade 2006).

Commerce's determination to rely on Turkish tariff schedule subheading 3801.10 import data instead of 3801.90 data, that it used in the *Preliminary Determination*, is based on the unsupported conclusion that ConMet consumed artificial graphite. *See* IDM at 24, P.R. 425. Nowhere in the record did Shandong ConMet state that it purchased artificial graphite. So, to reach its conclusion, Commerce reasoned that because nothing "indicate{s} that the product was something other than artificial graphite, the respondent must have consumed artificial graphite." *Id*, P.R. 425. Commerce's decision to structure its decision on a logical fallacy necessitates remand. *See Shenzhen Xinboda Indus. Co. v. United States*, 279 F. Supp. 3d 1265, 1298-1301, n. 36 (Ct. Int'l Trade 2017) (remanding Commerce's SV selection because of a pattern of faulty

8

analysis that amounted to a logic fallacy). As if Commerce's affirmative conclusion from a negative premise were not enough for remand, it also ignores record evidence that Shandong ConMet did not consume artificial graphite.

Shandong ConMet's submissions provide ample evidence that its recarburizing agent was not artificial graphite. Shandong ConMet's initial response, its October 16, 2024 Section D questionnaire response, described the recarburizing agent as "[                    ]."  Shandong ConMet Section D at Exhibit D-6, P.R. 226, C.R. 207. Then, in Shandong ConMet's initial and final SV comments, the respondent suggested the department use Turkish tariff schedule subheading 2713.12, which is for "Petroleum Coke, Calcined." Shandong ConMet Final SV Comments at 4, P.R. 316; Shandong ConMet Initial SV Comments at Attach. 1, P.R. 273. In its final SV comments, Shandong ConMet stated "{b}ecause Shandong ConMet believes that HS code 271312 remains the most appropriate HS code to value Shandong ConMet's recarburizing agent, the summary sheet does not include the alternative value for Shandong ConMet's recarburizing agent based on HS code 380110." Shandong ConMet Final SV Comments at 4, P.R. 316. Shandong ConMet would not have told Commerce it believed Turkish tariff schedule subheading 3801.10 was not appropriate if it had consumed artificial graphite because subheading 3801.10 covers artificial graphite. See Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295.

During the same surrogate value comment period, Petitioner demonstrated in its rebuttal SV submission that Turkish tariff schedule subheading 3801.90 includes breakouts for articles such as "Carbons in graphitic compounds" and "semi-finished graphite," matching the varied and general information Shandong ConMet provided about the recarburizing agent. See

9

Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295. At that time, Petitioner provided an

excerpt of the Turkish tariff schedule, which is included below:

| Turkish Tariff Schedule | | | | | | |
|---|---|---|---|---|---|---|
| HS4 Code | HS4 Description | HS6 Code | HS6 Description | Primary Units | Tariff Line Code | Tariff Line Description |
| 3801 | Artificial Graphite; Colloidal Graphite; Preparations Based On Graphite Or Other Carbon In Pastes, Blocks, Plates Or Other Semimanufactures | 380110 | Artificial Graphite | KG | 380110000000 | Artificial Graphite |
| | | 380120 | Colloidal Or Semi-Colloidal Graphite | KG | 380120100000 | Colloidal Graphite In Solution In Liquid Oil; Semi; Colloidal Graphite |
| | | | | | 380120900000 | Colloidal Graphite; Semi; Colloidal Graphite; Other |
| | | 380130 | Carbonaceous Pastes For Electrodes And Similar Pastes For Furnace Linings | KG | 380130000000 | Carbonaceous Pastes For Electrodes And Similar Pastes For Insulating Furnaces |
| | | 380190 | Preparations Based On Graphite, Nesoi | KG | 380190001000 | Metallo; Carbons In Graphitic Compounds/Others |
| | | | | | 380190009000 | Preparations Based On Paste, Block, Sheet/Other Semi-Finished Graphite/Other Carbon |

*Id.* at Ex. 2b, P.R. 295.

It was, thus, no surprise that in the *Preliminary Determination*, the Department did not

value ConMet's consumption using artificial graphite data; instead, it valued Shandong

ConMet's consumption of recarburizing agent using import data of Turkish tariff schedule

subheading 3801.90 ("Preparations Based On Graphite, Nesoi"). *See* Prelim SV Memo, at

Attach. 1, P.R. 364.[1] Shandong ConMet's recarburizing agent, which it described as a

---

[1] Prior to the *Preliminary Determination*, in a supplemental questionnaire response requesting a "description of the materials associated with each number and any other name or code associated with the material in Shandong

"[          ]," and which it believed the subheading for artificial graphite was not appropriate, could not be pure artificial graphite. Shandong ConMet Final SV Comments at 4, P.R. 316. Commerce rightly concluded that the best available SV data was for a broad subheading, that covered preparations that contain graphitized carbon. *See* Prelim SV Memo at Attach. 1, P.R. 364. That subheading includes articles such as "Carbons in graphitic compounds" and "semi-finished graphite." *See* Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295.

In the *Final Determination*, Commerce acknowledged some of that history through a brief recitation of the submission history yet somehow concludes "{t}he record contains clear evidence that Shandong ConMet uses artificial graphite as its recarburizing agent, while containing no evidence that any other material is used." IDM at 21, P.R. 425. This ignored that Shandong ConMet itself believed it did not consume artificial graphite. Shandong ConMet Final SV Comments at 4, P.R. 316.

Commerce chose to frame its analysis as an assessment of whether there is any evidence of "natural" graphite consumption. IDM at 21-22, P.R. 425. That is, however, immaterial to whether Turkish tariff schedule data that includes articles such as "Carbons in graphitic compounds" and "semi-finished graphite," continues to be appropriate for valuing Shandong ConMet's recarburizing agent.[2] *See* Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295. Although Commerce explained that artificial and natural graphite are different, it did not explain why the [          ] could only be pure artificial graphite. *See* IDM at 22, P.R. 425. In this way

---

ConMet's ERP system," the respondent again listed the FOP as a [                    ] without identifying information. Shandong ConMet Section D SQR at Ex. SD-20, P.R. 339, C.R. 354.

[2] No party argued that Commerce should utilize the Turkish tariff schedule subheading for natural graphite, which is subheading 2504. Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295. Petitioner also did not argue that evidence of natural graphite use was necessary or relevant to a conclusion that Shandong ConMet's "recarburizing agent" best fit under the description, "Preparations Based On Graphite." *See generally* Petitioner Rebuttal Case Brief at 2-10, P.R. 416, C.R. 497.

**PUBLIC VERSION**

it perpetuated a logic fallacy. The lack of evidence of one thing does not alone create the existence of another thing.

Commerce fell into the same logical trap regarding its assessment of information reviewed at verification. *See* IDM at 22-23, P.R. 425. It claimed that because "none of the material descriptions on the purchase documentation contain a single reference to any specific materials that are not graphitized and therefore something other than artificial graphite," the input must be artificial graphite. *Id.* at 23, P.R. 425. However, again, Shandong ConMet never claimed that it consumed artificial graphite. At verification, Commerce reviewed supporting purchase invoices describing the input as "[

]." Shandong ConMet FOP Verification Report at Ex. 10, pp. 475, 487, 501, P.R. 401, C.R. 485. The Department's insistence that because it saw no evidence of natural graphite, the product had to be artificial graphite does not support the conclusion that the product was not a mixture or preparation that may have contained artificial graphite. *See* IDM at 24, P.R. 425. It had no basis to conclude that "the documentation for these purchases clearly indicates that Shandong ConMet purchased artificial graphite during the POI for use as a recarburizing agent." IDM at 23, P.R. 425.

Perhaps considering this vulnerability, Commerce also concluded that it "did not observe any purchases of materials described as preparations, mixtures, compounds or any other product containing multiple materials." *Id.,* P.R. 425. That conclusion neglects that Shandong ConMet's description of the input, which it refers to variously as "recarburizing agent," [

] all could fit under the description "Preparations Based On Graphite," the

description of 3801.90. Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295. The fact that

Commerce did not see the word "preparation" in Shandong ConMet's documents does not mean

the recarburizing agent was not a preparation, a word meaning "something that is prepared."[3]

By focusing on the absence of certain words, Commerce missed that Shandong ConMet's

various and sundry descriptions of the "recarburizing agent" support the conclusion that the

product was a preparation based on graphite. If it was pure artificial graphite, Shandong ConMet

would have described it as such. Indeed, this is the point that Petitioner argued in its rebuttal case

brief prior to the *Final Determination*. As Petitioner stated then, "Petitioner is not arguing that

HTS Heading 3801, which contains artificial graphite, is inappropriate.  The issue is whether

ConMet's recarburizing agent, which it described as a '[          ]', is pure artificial graphite, or

whether it is a preparation that contains graphitized carbon." Petitioner Rebuttal Case Brief at 6,

P.R. 416, C.R. 497. Because of the lack of evidence that Shandong ConMet consumed artificial

graphite, it was only logical for Commerce to continue to use the broader tariff code, 3801.90,

instead of switching to a narrower subheading, 3801.10, covering a substance that Shandong

ConMet never professed to consume.

Commerce's faulty logic makes this case ripe for remand, as the Court has ordered in

similar cases. In *Baoding Mantong Fine Chemistry Co. v. United States*, the Court remanded

Commerce to provide a well-reasoned and adequately explained explanation of its SV selection

for ammonia because Commerce's determination relied on the absence of specific contradictory

information at verification to conclude that the respondent consumed an alternative input that the

respondent did not specifically report consuming. *Baoding Mantong Fine Chemistry Co. v.*

---

[3] *Preparation*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/preparation (last visited Mar. 15, 2026). Additionally, Commerce's initial SV selection of Turkish tariff schedule subheading 3801.90, includes articles such as "Carbons in graphitic compounds" and "semi-finished graphite." *See* Petitioner Rebuttal SV Comments at Ex. 2a, P.R. 295. In other words, HTS 3801.90 is not limited to compounds.

**PUBLIC VERSION**

*United States*, 222 F. Supp. 3d 1231, 1250-51 (Ct. Int'l Trade 2017). Similar to that case, Commerce here relied on the absence of words such as "compound" in Shandong ConMet's records to conclude that Shandong ConMet must have consumed pure artificial graphite. IDM at 22-24, P.R. 425. Like in that case, the record also contains evidence of contradictory information. *See Baoding Mantong Fine Chemistry,* 222 F. Supp. 3d at 1250. For example, Shandong ConMet believed the Turkish tariff schedule data for artificial graphite was not appropriate and never stated that it consumed artificial graphite despite repeatedly responding to Commerce's requests for information about its input and how to value it. *See* Shandong ConMet Final SV Comments at 4, P.R. 316; IDM at 21, P.R. 425.

Similarly, in *Carbon Activated Tianjin Co. v. United States*, the Court held "that Commerce's selection of Malaysian data for HS 4402.90.1000 to value carbonized material is unsupported by substantial evidence" because "the agency's choice of a specific subcategory over a basket category in the valuation of carbonized material is not supported by Commerce's explanation." *Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360, 1379 (Ct. Int'l Trade 2022). As the Court stated, "Commerce's decision-making must take into account the facts on the record." *Id.* As in that case, it was inappropriate for Commerce to assume without specific evidence that Shandong ConMet consumed pure artificial graphite when the varied descriptions of the product provided by the respondent meant that describing it under a more-specific subheading—that it initially rejected—was not supported by substantial evidence. *See* Shandong ConMet Final SV Comments at 4, P.R. 316; IDM at 21, P.R. 425. Commerce should not select a narrow subheading over a broader subheading when record evidence submitted by the respondent contradicts a conclusion that the entity consumed that specific substance. *Carbon Activated Tianjin,* 586 F. Supp. 3d at 1379.

14

PUBLIC VERSION

In sum, Commerce's reliance on subheading 3801.10 import data instead of 3801.90 data, that it used in the *Preliminary Determination*, is unsupported by record information. Commerce neglected to consider Shandong ConMet's own statements on its consumption and its repeated requests that the Department not use artificial graphite data. Instead of using surrogate value data that was broad enough to cover the varied descriptions of the input, Commerce picked specific artificial graphite data that could not be considered the best available given the absence of specific information that Shandong ConMet consumed artificial graphite and the availability of more representative data under the broader 3801.90 subheading.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court hold that Commerce's *Final Determination* is not supported by substantial evidence and otherwise not in accordance with law, remand the *Final Determination* to Commerce for reconsideration consistent with the opinion of this Court, and order such other relief that the Court deems just and proper.

Respectfully submitted,

/s/Sydney H. Mintzer
Jacob M. Reiskin
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3866
*Counsel to Webb Wheel Products, Inc.*

Dated:  March 23, 2026

15

**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURES 2(B)(1)**

The undersigned hereby certifies that this brief contains 3,892 words, exclusive of the corporate disclosure statement, table of contents, table of authorities, glossary of case-specific acronyms and abbreviations, and certificates of counsel, and therefore complies with the maximum 14,000 word count limitation as set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

/s/Sydney H. Mintzer
Jacob M. Reiskin
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3866
*Counsel to Webb Wheel Products, Inc.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

WEBB WHEEL PRODUCTS, INC.

      Plaintiff,

  and,

CONSOLIDATED METCO, INC. and
SHANDONG CONMET MECHANICAL
CO., LTD.,

      Consolidated Plaintiffs,

  v.

UNITED STATES OF AMERICA,

      Defendant,

  and,

CONSOLIDATED METCO, INC. and
SHANDONG CONMET MECHANICAL
CO., LTD.

      Defendant-Intervenor,
  and,

WEBB WHEEL PRODUCTS, INC.

      Consolidated
      Defendant-Intervenor.

Consol. Ct. No. 25-00207
Before Hon. Timothy C. Stanceu,
Senior Judge

## ORDER

Upon consideration of Plaintiff Webb's Rule 56.2 Motion for Judgment on the Agency

Record, the Court having reviewed the responses thereto, and all other pertinent pleadings and

papers, it is hereby:

**ORDERED** that Plaintiff's Rule 56.2 Motion is hereby granted; and it is further

**ORDERED** that the *Final Determination* issued by the U.S. Department of Commerce ("Commerce") in the antidumping investigation covering *Certain Brake Drums from the People's Republic of China, 90 Fed. Reg. 26011* (Dep't Commerce June 18, 2025) ("*Final Determination*") is not supported by substantial evidence and is otherwise not in accordance with law; and it is further

**ORDERED** that the *Final Determination* is remanded to Commerce for further consideration consistent with this opinion.

**SO ORDERED**.

_____
Timothy C. Stanceu, Judge

Dated:_____, 2026
New York, New York

2