**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| WEBB WHEEL PRODUCTS, INC., *Plaintiff,* and CONSOLIDATED METCO, INC., and SHANDONG CONMET MECHANICAL CO., LTD., *Consolidated Plaintiffs,* v. UNITED STATES, *Defendant,* CONSOLIDATED METCO, INC., and SHANDONG CONMET MECHANICAL CO., LTD., *Defendant-Intervenors,* and WEBB WHEEL PRODUCTS, INC., *Consolidated Defendant-Intervenor.* | Consol. Court No. 25-00207 |

**<u>DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

**TABLE OF CONTENTS**

I. Introduction ........ 1

II. Statement Pursuant to Rule 56.2(c)(1) ........ 1

A. Administrative Determination Under Review ........ 1

B. Statement of Issues ........ 1

III. Statement of Facts ........ 1

IV. Standard of Review ........ 2

V. Summary of Argument ........ 2

VI. Argument ........ 3

VII. Conclusion ........ 10

# TABLE OF AUTHORITIES

**CASES**

*Baoding Mantong Fine Chemistry Co. v. United States*, 222 F. Supp. 3d 1231 (Ct. Int'l Trade 2017) ........ 9

*Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022)........ 9

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999) ........ 8

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016)........ 2

*Hayes-Sammons Co. v. United States*, 55 C.C.P.A. 69 (1968)........ 8

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951)........ 2

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i)........ 2, 8

19 U.S.C. § 1677b(c)(1)........ 3

## I. Introduction

Defendant-Intervenors Consolidated Metco, Inc. ("ConMet") and Shandong ConMet Mechanical Co., Ltd. ("Shandong ConMet") submit this response brief in opposition to the Rule 56.2 Motion for Judgment on the Agency Record filed by Plaintiff Webb Wheel Products, Inc. ("Webb Wheel"). In its Rule 56.2 Motion and accompany Memorandum of Law in Support of Motion for Judgment on the Agency Record, ECF No. 39, ("Webb Wheel Br."), Webb Wheel challenges the surrogate value selected for Shandong ConMet's recarburizing agent input by the U.S. Department of Commerce ("Commerce") in the final determination in the antidumping duty investigation of certain brake drums from the People's Republic of China ("China"). Because Commerce's determination regarding the appropriate recarburizing agent surrogate value is more than adequately supported by the record, the Court should reject Webb Wheel's challenge.

## II. Statement Pursuant to Rule 56.2(c)(1)

### A. Administrative Determination Under Review

Plaintiff seeks judicial review of the final determination issued by Commerce in the antidumping duty investigation of certain brake drums from China. *See Certain Brake Drums From People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 26,011 (June 18, 2025) ("Final Determination").

### B. Statement of Issues

1. Whether substantial evidence supports Commerce's determination that Turkish import data for HS code 3801.10 constituted the best information to value Shandong ConMet's recarburizing agent input.

## III. Statement of Facts

The facts related to the issue raised by Webb Wheel are set forth in Defendant's response brief. *See* Def.'s Resp. to Pl. and Consol. Pls.' Mots. for J. upon the Agency R., ECF No. 45

("Gov. Br."). To the extent that additional facts not mentioned by Defendant are relevant to ConMet and Shandong ConMet's arguments, they are discussed within the context of the arguments set forth in this brief.

## IV. Standard of Review

The Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951)).

## V. Summary of Argument

The record before Commerce contained information clearly demonstrating that Shandong ConMet's recarburizing agent is properly described as artificial graphite and that a surrogate value based upon HS subheading 3801.10, which covers artificial graphite, constituted the best available information for valuing Shandong ConMet's recarburizing agent input. Webb Wheel's arguments ultimately boil down to a criticism that Shandong ConMet failed to explicitly identify its recarburizing agent using the exact term "artificial graphite" in certain documents. However, none of the descriptions provided by Shandong ConMet contradict Commerce's determination that the recarburizing agent is properly characterized as artificial graphite, and information provided by Shandong ConMet and ConMet in their surrogate value filings and at verification provided ample evidence that the recarburizing agent can be described as artificial graphite and that HS subheading 3801.10, which is applicable to artificial graphite, better captures Shandong ConMet's recarburizing agent input than HS subheading 3801.90, which applies to preparations based on graphite not elsewhere specified or included in HS heading 3801. Commerce's

determination regarding the recarburizing agent surrogate value accordingly is supported by substantial evidence.

## VI. Argument

In antidumping cases involving a non-market economy like China, the statute directs Commerce to calculate normal value "on the basis of the value of the factors of production utilized in producing the merchandise" and provides that "the valuation of the factors of production shall be based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by" Commerce. 19 U.S.C. § 1677b(c)(1). Shandong ConMet's recarburizing agent is accurately described as artificial graphite, and Commerce reasonably determined that a surrogate value based upon prices for imports of merchandise classified as "artificial graphite" under HS subheading 3801.10 constituted the best available information to value that factor of production.

Webb Wheel asserts that Shandong ConMet did not describe its recarburizing agent as "artificial graphite." *See, e.g.*, Webb Wheel Br. 9-13. But, as Commerce determined in the Final Issues and Decision Memorandum, Shandong ConMet did. As summarized by Commerce:

> {I}n its December 26, 2024 SV Comments, Shandong ConMet: (1) reported that its recarburizing agent is graphitized graphite; (2) provided documentation that petroleum coke is the raw material from which this graphite is graphitized; (3) provided documentation that the defining characteristic of synthetic graphite is that it is graphitized; and (4) clarified that "synthetic" graphite and "artificial" graphite are the same material. From these facts, it is clear that Shandong ConMet reported that its recarburizing agent was *artificial graphite* produced from petroleum coke.

Memorandum from Scot Fullerton to Steven Presing, *Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Brake Drums from the People's Republic of China* (June 13, 2025) at 22, P.R. 425 ("Final IDM") (emphasis in original). Whereas Commerce meaningfully engaged with these facts on the record, Webb Wheel does not.

Shandong ConMet explained in its Additional Surrogate Value Comments that it was providing "the applicable standard for the graphitized recarburizer *used by Shandong ConMet*." Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Brake Drums from the People's Republic of China: Additional Surrogate Value Comments* (Dec. 26, 2024) at 3, C.R. 323/P.R. 316 ("ConMet's Additional Surrogate Value Comments") (emphasis added). Shandong ConMet further stated that the standard identified petroleum coke as the raw material, and it provided the standard for the "graphitized recarburizer," which explained that the recarburizing agent is a "graphitized carburizing agent prepared by high temperature graphitization for the steel smelting and casting industry with petroleum coke as raw material." ConMet's Additional Surrogate Value Comments at 3 and Attach. 4, C.R. 323, 327/P.R. 316, 328-329. Shandong ConMet then provided an article that explained that "synthetic graphite," also known as "artificial graphite," is obtained through "high-temperature treatments or graphitization of amorphous carbon materials or non-graphitic carbon." *Id.* As Shandong ConMet also pointed out in its case brief, the word "graphitize" is defined as "to convert into graphite." Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Brake Drums from the People's Republic of China: Shandong ConMet's Case Brief* (May 15, 2025) at 8, C.R. 492/P.R. 409 (quoting *Graphitze*, Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/graphitize). In addition to the evidence regarding its recarburizing agent and an article regarding artificial graphite, Shandong ConMet provided data for HS code 3801.10, which is specific to artificial graphite, and identified that code as a potentially appropriate classification as an alternative to a classification that was based upon the raw material before it was graphitized. ConMet's Additional Surrogate Value Comments at 3-4 and Attach. 5, C.R. 323, 327/P.R. 316, 330. Although Shandong ConMet did not say the magic

words of "our recarburizing agent is artificial graphite," the information that Shandong ConMet provided in its Additional Surrogate Value Comments makes clear that its recarburizing agent could accurately be described as artificial graphite because it was petroleum coke that had been graphitized through a high-temperature graphitization process.

That fact was confirmed by Commerce at verification. Shandong ConMet's own documents and documents issued by its suppliers describe the recarburizing agent as "graphite" that has been "graphitized" via "high temperature" from a "petroleum coke product." Letter from Akin Gump Strauss Hauer & Feld LLP to Sec'y of Commerce, *Shandong ConMet Mechanical Co., Ltd. FOP Verification Exhibits* (Apr. 4, 2025), Exhibit VE-10 at 65, 67, 71, 79, 86, 87, 100, C.R. 469-474/P.R. 395. Again, these documents might not use the magic words "artificial graphite," but those descriptions align with the industry standard provided by Shandong ConMet and accord with the definition of artificial graphite. An item does not need to be referred to by a specific word or term in order to be properly characterized as that word or term. One would naturally conclude that an item described as a "small block of frozen water used for chilling beverages" is an ice cube, even if the specific words "ice cube" were not used in the original description. Commerce noted that "the term 'graphitized' indicates both that a material is graphite and that is *artificial* graphite" and therefore rightly concluded that "the documentation for these purchases {observed at verification} clearly indicates that Shandong ConMet purchased artificial graphite during the POI for use as a recarburizing agent." Final IDM at 22-23, P.R. 425. Webb Wheel asserts that Commerce erred because Shandong ConMet's questionnaire responses and the documents at verification did not say "artificial graphite," but Commerce reasonably put two and two together to conclude that Shandong ConMet's recarburizing agent is artificial graphite.

Webb Wheel suggests that Shandong ConMet's description of its recarburizing agent as a "kind of chemical" undermines Commerce's determination that the recarburizing agent is artificial graphite. Webb Wheel Br. 9-11, 13. As Defendant argues in its response brief, "{t}his isolated, generalized description does not compel a conclusion that the product was not artificial graphite, as it does not identify a different product, contradict the graphitization references in the purchase records, or demonstrate that the input was a mixture or preparation." Gov. Br. 15. Notably, HS subheading 3801.10, which is specific to artificial graphite, is within Chapter 38 of the Harmonized Schedule, and Chapter 38 is titled "Miscellaneous Chemical Products." Thus, Shandong ConMet's description of its recarburizing agent as "a kind of chemical" (and other documents referring to the recarburizing agent using the word "chemical," *see* Webb Wheel Br. 12) is fully consistent with it being classified as artificial graphite.

Webb Wheel also points to Shandong ConMet's initial proposal to value the recarburizing agent using import data under HS subheading 2713.12, which is for "Petroleum Coke, Calcined." Webb Wheel Br. 9. Shandong ConMet fully agrees with Defendant, Gov. Br. 13, that Shandong ConMet's initial proposal of this subheading does not support Webb Wheel's contention that "ConMet. . . told Commerce it believed Turkish tariff schedule subheading 3801.10 was not appropriate." Webb Wheel Br. 9. It is unsurprising that as a respondent digs further into the specifications regarding their inputs and the various classification possibilities that their views on the best classification might change for certain inputs, particularly when the respondent purchases the input domestically (like Shandong ConMet did for its recarburizing agent) and therefore does not have a history of classifying the input for tariff purposes. In its Additional Surrogate Value Comments, Shandong ConMet identified the HS subheading for artificial graphite as a reasonable classification for its recarburizing agent input and never asserted that

this subheading would be inappropriate. ConMet's Additional Surrogate Value Comments at 3-4 and Attach. 5, C.R. 323, 327/P.R. 316, 328-329. In any event, as Defendant notes, regardless of Shandong ConMet's proposed HS subheadings, it is ultimately up to Commerce to determine which information is the best information available to value the respondent's factors of production. Gov. Br. 13. Notably, Shandong ConMet never suggested that HS subheading 3801.90, which Webb Wheel favors, would be appropriate even as an alternative. To the extent that Shandong ConMet's surrogate value proposals are dispositive or nearly dispositive of the appropriate classification for the merchandise, it would preclude using HS code 3801.90, yet the heart of Webb Wheel's argument is that Commerce should have used HS code 3801.90. This demonstrates the hollowness of Webb Wheel's argument.

Webb Wheel criticizes Commerce's reliance on the lack of evidence that Shandong ConMet's recarburizing agent contained other compounds besides graphite or consisted of natural graphite in deciding that HS code 3801.10 constituted the best available information to value the recarburizing agent. Webb Wheel Br. 11-14. According to Webb Wheel, "{t}he lack of evidence of one thing does not alone create the existence of another thing." Webb Wheel Br. 12. But, as explained above and in Defendant's response brief, record evidence, including the industry standard, an article describing artificial graphite, dictionary definitions, and company records, supports the conclusion that the recarburizing agent is properly characterized as artificial graphite. Commerce relied on that information in determining that HS code 3801.10 is appropriate.

The absence of information that Shandong ConMet's recarburizing agent contained other compounds besides graphite or consisted of natural graphite is relevant for two separate but related points. First, as a general matter, Commerce would need substantial evidence to support

a conclusion that a subheading covering merchandise other than artificial graphite is appropriate if it decided to not rely on HS subheading 3801.10. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Second, Webb Wheel's proposed HS code, 3809.10, covered "Preparations Based on Graphite, Nesoi," with "Nesoi" meaning "not elsewhere specified or included." *See* Webb Wheel Br. at 4-5. The relevant HTSUS heading, reproduced below, describes this same subheading as "Other," meaning other than the products described earlier in the six-digit subheadings of heading 3801.

| Heading/ Subheading | Stat. Suf-fix | Article Description | Unit of Quantity | Rates of Duty 1 General | Rates of Duty 1 Special | Rates of Duty 2 |
|---|---|---|---|---|---|---|
| 3801 | | Artificial graphite; colloidal or semi-colloidal graphite; preparations based on graphite or other carbon in the form of pastes, blocks, plates or other semimanufactures: | | | | |
| 3801.10 | | Artificial graphite: | | | | |
| 3801.10.10 | 00 | Plates, rods, powder and other forms, wholly or partly manufactured, for manufacturing into brushes for electric generators, motors or other machines or appliances | kg | 3.7%[1/] | Free (A, AU, BH, CL, CO, D, E, IL, JO, KR, MA, OM, P, PA, PE, S, SG) | 45% |
| 3801.10.50 | | Other | | Free[1/] | | 10% |
| | 10 | Surface-modified spherical graphite | kg | | | |
| | 90 | Other | kg | | | |
| 3801.20.00 | 00 | Colloidal or semi-colloidal graphite | kg | Free[1/] | | 10%[2/] |
| 3801.30.00 | 00 | Carbonaceous pastes for electrodes and similar pastes for furnace linings | kg | 4.9%[1/] | Free (A, AU, BH, CL, CO, D, E, IL, JO, KR, MA, OM, P, PA, PE, S, SG) | 30% |
| 3801.90.00 | 00 | Other | kg | 4.9%[1/] | Free (A, AU, BH, CL, CO, D, E, IL, JO, KR, MA, OM, P, PA, PE, S, SG) | 45% |

Eo nomine classification provisions are those tariff classification provisions that describe an article by name. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). "{A}n eo nomine designation, with no terms of limitation, will ordinarily include all forms of the named article." *Id.* (quoting *Hayes-Sammons Co. v. United States*, 55 C.C.P.A. 69, 75 (1968)). Subheading 3801.10 provides for artificial graphite without any further limitation, and it therefore covers artificial graphite in all its forms. This fact is demonstrated by the HTSUS 3801.10.10, shown in the except above, which falls within subheading 3801.10 and describes "plates, rods, powder, and other forms" of artificial graphite. Under the Harmonized Schedule, merchandise can be classified in subheading 3801.90 only when the merchandise cannot be

described as artificial graphite or one of the other HS subheadings in heading 3801. Commerce rightly concluded that because there was no evidence that the recarburizing agent consisted of natural graphite or that the petroleum coke that had been graphitized (that is, converted to graphite) was mixed with other chemicals, subheading 3801.90 was not an appropriate classification for the recarburizing agent.

Commerce's close examination of the recarburizing agent input at verification, Commerce's reasoned explanation engaging with the record, and the structure of the relevant HS subheadings distinguish this case from *Baoding Mantong Fine Chemistry Co. v. United States*, 222 F. Supp. 3d 1231 (Ct. Int'l Trade 2017), and *Carbon Activated Tianjin Co. v. United States*, 586 F. Supp. 3d 1360 (Ct. Int'l Trade 2022), which were cited by Webb Wheel. Webb Wheel Br. 13-14. In *Baoding*, Commerce completely failed to address record evidence, including statements by the respondent, that specifically contradicted its findings and assumptions. 222 F. Supp. 3d at 1250-51. Here, as explained above and in Defendant's response brief, Commerce considered the arguments and evidence and provided a reasonable explanation for why it believed the recarburizing agent to be artificial graphite based upon the record as a whole. The evidence and statements cited by Webb Wheel are not actually inconsistent with the recarburizing agent being artificial graphite and therefore do not undermine Commerce's conclusions, much less necessitate a remand in light of Commerce's engagement with the record on this issue. Nor is this case like *Carbon Activated Tianjin*, wherein Commerce appeared to have selected a surrogate value that was specific to a particular kind of charcoal (from coconut shell) based solely on the absence of evidence that the respondent did not use a different type of charcoal and without any evidence that the charcoal was coconut shell charcoal. 586 F. Supp. 3d at 1379. Here, Commerce cited evidence that supported classifying the recarburizing agent as

artificial graphite—namely the evidence in Shandong ConMet's Additional Surrogate Value Comments and the documents reviewed at verification. "Commerce did not use a process of elimination to conclude that the recarburizing agent was artificial graphite." Gov. Br. 15.

In short, Commerce's determination regarding the recarburizing agent surrogate value was supported by the record and its explanations were reasonable. Webb Wheel's arguments fall far short of demonstrating that Commerce's determination was unsupported by substantial evidence.

**VII. Conclusion**

For the foregoing reasons, we respectfully request that the Court deny Plaintiff's motion and sustain Commerce's determination with respect to the recarburizing agent surrogate value.

Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
Julia K. Eppard
Paul S. Bettencourt
Sung Un K. Kim
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street
Washington, DC 20006
Phone: (202) 887-4046
E-mail: mnicely@akingump.com
*Counsel for ConMet and Shandong ConMet*

Dated: August 28, 2026

**CERTIFICATE OF COMPLIANCE**

I, Matthew R. Nicely, an attorney with Akin Gump Strauss Hauer & Feld LLP, certify that Defendant-Intervenors' Response in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record contains 2,684 words (according to the word count feature of the Microsoft Word processing program) and therefore complies with the word-count limitation set forth in the Court's Scheduling Order, ECF No. 31.

Dated: August 28, 2026

/s/ Matthew R. Nicely
Matthew R. Nicely
AKIN GUMP STRAUSS HAUER & FELD LLP

*Counsel for ConMet and Shandong ConMet*